# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | No. CR15-3030-MWB |
| vs. | **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |
| JONETTA CLARK, | |
| Defendant. | |

## I. INTRODUCTION

Defendant Jonetta Clark is charged by indictment (Doc. No. 1) with possession with intent to distribute methamphetamine. She has filed a motion (Doc. No. 19) to suppress all evidence obtained as a result of her arrest. Plaintiff (the Government) has filed a resistance (Doc. No. 20) and Clark has filed a reply (Doc. No. 22). The Trial Management Order (Doc. No. 7) assigns motions to suppress to me to conduct any necessary evidentiary hearings and to prepare reports on, and recommend dispositions of, those motions.

I held an evidentiary hearing on September 1, 2015. Special Assistant United States Attorney Nathan Nelson appeared on behalf of the Government. Clark appeared personally and with her attorney, Assistant Federal Public Defender Brad Hansen. The Government presented the testimony of Fort Dodge, Iowa, Police Officer Chris Weiland. Defendant's exhibits A, B, C, D, E, F, G and H were admitted into evidence without objection. The motion is now fully submitted.

## II. SUMMARY OF EVIDENCE

On the evening of June 20, 2015, Officer Weiland was traveling south in his marked police vehicle on South 15th Street in Fort Dodge. As he approached the "T" intersection of South 15th Street and 18th Avenue South, he observed a black Cadillac approaching the intersection from the east (Weiland's left). In two separate police department reports and a sworn criminal complaint, Weiland wrote that he "observed a black Cadillac with a black female driver stopped at the intersection without a seat beat on." Ex. A at 2; Ex. B at 18; Ex. C at 1-2. Weiland testified, however, that he first saw the vehicle while it was still in forward motion. Video from Weiland's dashboard camera (Ex. F) does, in fact, show the Cadillac in forward motion as it slowed to a stop, but the video is not sufficiently clear to discern whether the driver (later identified as Clark) was wearing a seat belt.

Weiland was preparing to turn left onto 18th Avenue South at the time, meaning he would turn directly in front of Clark's vehicle. He testified that as he approached that vehicle, he saw Clark reach up, grab her seat beat and pull it down, as if to fasten it. He cannot recall whether Clark's vehicle was fully stopped or still decelerating when Clark made this movement. In any event, Weiland decided to initiate a traffic stop based on his suspicion that Clark had been operating her vehicle without wearing a seat belt.

Weiland completed his left turn and then entered a driveway in order to turn his vehicle around and pursue Clark. He testified that as he executed this maneuver, he looked back at the intersection and saw Clark turn right onto South 15th Street and accelerate rapidly. He perceived her rate of acceleration to be faster than normal. He then turned back onto South 15th Street to pursue Clark. Soon thereafter, he saw Clark's vehicle turn left into a driveway off of South 15th Street, less than one block from the intersection with 18th Avenue South. Weiland followed Clark's vehicle and

activated his overhead lights (but not his siren) just before making the left turn into the driveway.

Clark drove her vehicle to the end of the driveway, which was relatively long. She then exited the vehicle quickly, leaving the driver's side door open, and fled to an adjacent, downhill embankment that leads to the Des Moines River. Weiland parked his vehicle behind Clark's Cadillac and pursued her on foot. He testified that he could see Clark stumbling and falling down the steep embankment. He followed and likewise fell at least once. He does not recall whether he ever yelled anything at Clark during the pursuit.

Weiland quickly caught up with Clark and placed her under arrest. He testified that the arrest was based on an alleged violation of Iowa Code § 719.1 (interference with official acts).[1] Weiland did not place Clark in handcuffs at that time, as she was complaining of a leg injury and he believed it was going to be difficult to walk her back up the steep hill. As they walked, Clark attempted to reach into a purse she was carrying. According to Weiland, he was concerned that she might be reaching for a weapon, so he seized the purse. As they approached the top of the embankment, Weiland threw the purse to the top so he could help Clark ascend the final, steep portion. Once they reached the top, Clark again reached for the purse and, this time, was able to pull an object from it. She then threw the object down the embankment. Weiland

---

[1] When prompted by counsel for the Government, Weiland agreed that he also could have arrested Clark for the alleged seat belt violation. I do not understand the significance of this point. When asked directly why he arrested Clark, Weiland answered that the arrest was based on his belief that Clark had interfered with official acts. He did not say that he arrested Clark for a seat belt violation, or that he has ever arrested anyone for failure to wear a seat belt. I find, in accordance with Weiland's own testimony, that the arrest was based on a charge of interference with official acts.

restrained Clark while waiting for backup to arrive and kept watch on the area where the object had landed.

Once additional officers arrived, Weiland went back down the embankment to retrieve the item Clark had thrown. He found a large clear plastic bag which held (a) two smaller clear bags containing a crystal substance and (b) two smaller clear bags containing a green leafy substance. Based on his training and experience, Weiland believed that the substances were methamphetamine and marijuana. A subsequent search of Clark's purse revealed additional items of evidentiary value, as did a search of Clark's vehicle pursuant to a search warrant.

## III. DISCUSSION

Clark argues that Weiland had no lawful reason to pursue and arrest her because he lacked probable cause to believe that she had committed a criminal offense. She thus contends that all evidence seized during and after the allegedly-unlawful arrest must be suppressed. The Government disagrees, arguing that Weiland had reasonable suspicion to initiate a traffic stop and that Clark's actions after Weiland attempted to stop her justified her arrest.

### A. *Was the Traffic Stop Illegal?*

Weiland testified that he initiated a traffic stop because he believed Clark had violated Iowa Code § 321.445. That statute states as follows, in relevant part:

> The driver and front seat occupants of a type of motor vehicle that is subject to registration in Iowa . . . shall each wear a properly adjusted and fastened safety belt or safety harness any time the vehicle <u>is in forward motion</u> on a street or highway in this state . . . .

4

Iowa Code § 321.445 [emphasis added]. Clark argues that Weiland did not witness a violation of Section 321.445 because he did not see her vehicle "in forward motion" while she was without a seat belt. Clark notes that Weiland repeatedly wrote in official narratives that he observed her "stopped at the intersection without a seat belt on" and that he then saw her reach over and fasten her seat belt as he approached. Ex. A at 2; Ex. B at 18; Ex. C at 1-2. According to Weiland's reports, it was only after Clark fastened her seat belt that he saw her move forward from the stop sign and turn right onto South 15th Street. *Id.* Clark argues that these events, as reported by Weiland, indicate that Weiland did not have reasonable suspicion, let alone probable cause, to believe that Clark violated Section 321.445.

The Government contends that the evidence, including Weiland's testimony and the video from his dashboard camera, demonstrates that Weiland had reasonable suspicion to initiate a traffic stop. The Government then argues that Clark's actions after Weiland initiated the stop provided probable cause to support her arrest and the subsequent seizure of evidentiary items in her possession.

The Fourth Amendment permits brief investigatory stops, including traffic stops, when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–418 (1981)); *see also Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). Reasonable suspicion takes into account the totality of the circumstances and requires more than a hunch, but is "considerably less than proof of wrongdoing by a preponderance of the evidence" and, indeed, is "obviously less" than the showing necessary to establish probable case. *Navarette*, 134 S. Ct. at 1687 [citations omitted].

The Government contends that Weiland was entitled to initiate a traffic stop because he observed events giving rise to a reasonable suspicion that Clark was in

5

violation of Iowa's seat belt law. I agree and do not find this to be even a close call. While Clark is correct that a violation of Iowa Code § 321.445 can occur only when a vehicle is "in forward motion," Weiland's testimony – which I find to be credible[2] – indicates that he saw Clark's vehicle in forward motion as it approached the stop sign and he then saw her reach for her seat belt and fasten it. These observations gave rise to a reasonable suspicion that Clark may have been operating her vehicle in violation of Iowa's seat belt law. That is, it is not unreasonable to suspect that a person observed pulling a seat belt across her body at one instant was not wearing the seat belt immediately prior to that action.

Clark notes, however, that the conduct Weiland observed could have had a perfectly innocent explanation. For example, perhaps Clark had briefly unfastened her seat belt to reach for an item and was in the process of re-fastening it when Weiland drove by. The fact that an innocent explanation was possible does not eliminate reasonable suspicion. Indeed, the Supreme Court has stated:

> We noted in *Gates* . . . that "innocent behavior will frequently provide the basis for a showing of probable cause," and that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." That principle applies equally well to the reasonable suspicion inquiry.

---

[2] I find Weiland's testimony to be credible for two primary reasons. First, the dashboard camera video confirms that Clark's vehicle was in forward motion as Weiland's police vehicle approached the intersection. Second, and more importantly, I find no basis to disbelieve Weiland's testimony. It is not contradicted by other evidence and Weiland freely admitted, at various times, his uncertainty about certain events (*e.g.*, whether Clark's vehicle had come to a complete stop when Weiland saw Clark reach for her seat belt). Even the narrative description of events in his various reports is, at best, incomplete rather than inconsistent with his testimony. In writing that he saw Clark "stopped at the intersection without a seat belt on," he failed to note that he also saw the vehicle in forward motion immediately before it came to a stop.

6

*United States v. Sokolow*, 490 U.S. 1, 10 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 243–244, n. 13 (1983)); *see also United States v. Cotton*, 782 F.3d 392, 395-96 (8th Cir. 2015) (conduct that is susceptible to an innocent explanation can form the basis of reasonable suspicion). The question is not whether Weiland could prove a seat belt law violation beyond a reasonable doubt at the time he decided to stop Clark. Instead, the question is whether Weiland's observations gave rise to a reasonable suspicion that such a violation might have occurred. They did.

Finally, Clark raises the issue of whether a *Terry* stop is ever justified to investigate previous, alleged misdemeanors. The Eighth Circuit Court of Appeals has stated:

> *Terry* stops are permitted to investigate previous felonies, but the Supreme Court has never decided whether *Terry* stops are justified by a need to investigate previous misdemeanors (or lesser violations). *See* [*United States v. Hensley*, 469 U.S. 221, 229 (1985)] ("We need not and do not decide today whether *Terry* stops to investigate all past crimes, however serious, are permitted."). *Cf. McFadden v. United States*, 814 F.2d 144, 147 (3rd Cir.1987) (*Terry* stop to investigate a previous trespass, a felony in Pennsylvania, was not unreasonable under the circumstances).

*United States v. Hughes*, 517 F.3d 1013, 1017 (8th Cir. 2008). Justice Scalia's recent dissenting opinion in *Navarette* noted that this issue remains unsettled. 134 S. Ct. 1683 at 1695 n.3 (Scalia, J., dissenting).

Clark's raises this issue based on a premise that once Weiland saw her fasten her seat belt, the traffic stop was for the sole purpose of investigating a previous alleged misdemeanor. In other words, even if she was breaking the law when Weiland first saw her, the fact that she stopped the unlawful conduct as a police officer approached made a *Terry* stop improper. I disagree. Weiland personally observed conduct that gave rise to at least a reasonable suspicion that Clark was engaged in a criminal offense. The fact that Clark took corrective action as Weiland approached does not change the analysis. Weiland was not investigating reports of seat belt violations that allegedly occurred hours

7

or days earlier. He was investigating conduct that he personally and contemporaneously observed. I find the issue of whether it is proper to conduct a *Terry* stop to investigate past, misdemeanor-level conduct to be irrelevant.[3]

In short, and in considering the totality of the circumstances, I find that the events Weiland observed gave rise to a reasonable suspicion that Clark violated Iowa Code § 321.445. Weiland's attempt to initiate a traffic stop based on that reasonable suspicion did not violate Clark's Fourth Amendment rights.

### B. *Was the Arrest Supported by Probable Cause?*

There is no dispute that the evidentiary items Clark seeks to suppress were located either (a) incident to her arrest or (b) pursuant to a search warrant that would not have issued but for her arrest. As Clark puts it, all of the evidence at issue was "the direct product" of her arrest. Doc. No. 19-1 at 5. If the arrest violated the Fourth Amendment, then the exclusionary rule would require its suppression. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 139 (2009) (exclusionary rule forbids the use of improperly obtained evidence at trial).

During argument, Clark's counsel acknowledged that a finding of reasonable suspicion to initiate the traffic stop would likely dispose of her motion to suppress. This is true because if Weiland had a lawful reason to stop Clark, then her response to the attempted traffic stop (which is undisputed on the current record) established probable cause to arrest her on a charge of interference with official acts in violation of Iowa Code

---

[3] In addition, and as Weiland pointed out during his testimony, he not could not be certain that Clark actually fastened her seat belt. All he saw was that she grabbed the seat belt and pulled it across her body as if to fasten it. He could not see whether she did so. This is another reason why it is incorrect to label Clark's alleged conduct as nothing but a past misdemeanor.

§ 719.1.⁴  Because I have found that Weiland had reasonable suspicion, at least, to initiate a traffic stop, I find that he had probable cause to arrest Clark based on his personal observations of her flight and attempted disposal of evidence.

The more interesting issue, which I will address in the event that the district court does not adopt my finding of reasonable suspicion, is whether probable cause for the arrest existed even if the traffic stop was illegal.  In other words, if Weiland had no lawful basis to stop Clark, was he nonetheless entitled to arrest her for interference with official acts based on her response to the stop?⁵  "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Under Iowa law, the offense of interference with official acts occurs only when a person "resists or obstructs" an act that is "within the scope of the lawful duty or authority" of a peace officer.  Iowa Code § 719.1(1)(a).  The evasion of a peace officer after pursuit and activation of emergency lights constitutes a violation of Section

---

⁴ Which states, in relevant part:

> A person commits interference with official acts when the person knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . .

Iowa Code § 719.1(1)(a).

⁵ As I noted earlier, Weiland testified that this was the only alleged offense for which he initially arrested Clark.  While agreeing that he could have also arrested Clark for a seat belt violation, he did not state that he actually did arrest her for that alleged offense.  Moreover, of course, if the district court determines that Weiland did not have reasonable suspicion to believe that a seat belt violation occurred, then he clearly lacked probable cause to arrest Clark for such a violation.  All of this simply means that in this section of this Report and Recommendation, interference with official acts is the only alleged offense I will consider in determining whether Weiland had probable cause to arrest Clark.

719.1. *State v. Legg*, 633 N.W.2d 763, 772 (Iowa 2001). Based on the evidence discussed earlier, I find that Clark knew Weiland was in pursuit and, in an effort to evade him, drove into a driveway, exited her car with haste and ran.

Clark, however, contends that if the traffic stop was illegal, then it was not within Weiland's "lawful duty or authority," meaning she was free to resist or obstruct the stop without violating Section 719.1. I disagree. The Eighth Circuit has held that "a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest." *United States v. Blackmon*, 662 F.3d 981, 985-86 (8th Cir. 2011) (quoting *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995)). The Iowa Supreme Court has adopted this rule. *State v. Dawdy*, 533 N.W.2d 551, 555 (Iowa 1995); *see also State v. Thomas*, 262 N.W.2d 607, 611 (Iowa 1978) ("a person may not resist an arrest reasonably effected by one whom the arrestee knows or has good reason to know is a peace officer, despite legality or illegality of the arrest"). Clark's only answer to these cases is to note that they each involved a charge of resisting arrest, not interference with official acts. Doc. No. 22 at 5. While Clark attempts to find some meaning in this distinction, I find none.

The purpose of Section 719.1 "is to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance." *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996) (citing *State v. Hauan*, 361 N.W.2d 336, 339 (Iowa Ct. App. 1984)). Allowing an individual to make his or her own judgment as to whether an officer is acting "within the scope of the lawful duty or authority," and to resist or obstruct if the individual believes the answer to be "no," is not consistent with this purpose. In most situations in which there is any doubt about whether an officer is acting lawfully, that question may not be answered for weeks or months later, in the course of a judicial proceeding. Clark provides no support for the proposition that the Iowa Legislature intended Section 719.1 to authorize "self-help" interference with a

peace officer's actions whenever there might be some possible doubt about the lawfulness of those actions.[6]

Individuals subjected to conduct by a peace officer that is later deemed to be unlawful have various avenues of relief. Evidence gathered as a result of such unlawful conduct can be suppressed. Constitutional deprivations can be remedied through an action brought pursuant to 42 U.S.C. § 1983. I find no support, however, for the argument that Iowa law permits an individual to make his or her own snap decision as to the lawfulness of a peace officer's actions and to interfere with any actions he or she considers to be unlawful. This means that even if Weiland's attempt to stop Clark is ultimately found to have been improper, Clark's response to that attempt nonetheless gave rise to probable cause for Weiland to arrest her on a charge of interference with official acts. Clark was not entitled to resist or obstruct in hopes that the attempted traffic stop would someday be deemed unlawful.

Because the warrantless arrest was supported by probable cause, I would recommend denial of the motion to suppress even if it is found that Weiland lacked reasonable suspicion to initiate a traffic stop.

---

[6] One can imagine hypothetical scenarios in which an officer's actions are so obviously illegal, and outside the scope of any lawful duty or authority, that interference with those actions could not possibly violate Section 719.1. This case does not present such a scenario. Moreover, I do not intend to suggest that the refusal to cooperate with a peace officer is always a violation of Iowa Code § 719.1. *See, e.g., Florida v. Royer*, 460 U.S. 491, 498 (1983) (an individual approached by an officer may decline to answer questions and go about his or her business). As noted above, however, Clark did not simply go about her business. Instead, she actively fled Weiland's pursuit and attempted to dispose of evidence. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite.").

## *IV. CONCLUSION*

For the foregoing reasons, I RESPECTFULLY RECOMMEND that defendant's motion to suppress (Doc. No. 19) be **denied**.

**DEADLINES:** Because trial is scheduled to begin October 5, 2015, objections to this Report and Recommendation must be filed by **September 14, 2015**. Responses to objections must be filed by **September 24, 2015**. Any party planning to lodge an objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **September 10, 2015**, regardless of whether the party believes a transcript is necessary to argue the objection. If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 4th day of September, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE