**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> vs. <br><br> JONETTA CLARK, <br><br> Defendant. | No. CR15-3030-MWB <br><br> **MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION AND BACKGROUND................................................2*
   *A.   Procedural Background ................................................2*
   *B.   Factual Background .....................................................3*
*II.  LEGAL ANALYSIS ........................................................................5*
   *A.   Standard Of Review ......................................................5*
   *B.   Clark's Objections To Report and Recommendation ...................10*
      *1.   Factual Objections ....................................................10*
         *a.   Weiland's testimony regarding whether Clark's car was stopped...................10*
         *b.   Weiland's testimony regarding whether Clark fastened her seat belt..................11*
         *c.   Weiland's testimony that he observed Clark accelerate rapidly ..................12*
         *d.   Weiland's reason for arresting Clark .....................13*
      *2.   Objections to legal conclusions .....................................13*
         *a.   Whether Weiland had a basis to stop or arrest Clark for not wearing a seat belt..................13*
         *b.   Innocent explanation.........................................16*
         *c.   Stop to investigate "past" criminal activity..................17*

***III.   CONCLUSION ................................................................. 19***

## I.   INTRODUCTION AND BACKGROUND

### A.   Procedural Background

On July 23, 2015, an Indictment was returned against defendant Jonetta Clark, charging her with possessing with intent to distribute 50 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Clark subsequently filed a Motion to Suppress in which she seeks to suppress all evidence seized from her car and all evidence derived from that search. Clark argues that Fort Dodge Police Officer Chris Weiland had no lawful reason to pursue and arrest her because he lacked probable cause to believe that she had committed a criminal offense. Clark thus contends that all evidence seized during and after the allegedly unlawful arrest must be suppressed. The prosecution filed a timely resistance to Clark's motion. Clark's Motion to Suppress was referred to United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b). Judge Strand conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that Clark's Motion to Suppress be denied. In his Report and Recommendation, Judge Strand initially concluded that Weiland was entitled to initiate a traffic stop of Clark's car because he observed events giving rise to a reasonable suspicion that Clark was violating Iowa's seat belt law. Thus, Judge Strand concluded that Weiland's attempt to initiate a traffic stop based on that reasonable suspicion did not violate Clark's Fourth Amendment rights. Based on that finding, Judge Strand further concluded that Weiland had probable cause to arrest Clark for interference with official acts based on his personal observations of her flight and

2

attempted disposal of evidence. Alternatively, Judge Strand determined that, even if Weiland's attempt to stop Clark was improper, Clark's response to that attempt nonetheless gave rise to probable cause for Weiland to arrest her on a charge of interference with official acts because Clark was not entitled to resist or obstruct in hopes that the attempted traffic stop would subsequently be deemed unlawful.

Clark has filed objections to Judge Strand's Report and Recommendation. The prosecution filed a timely response to Clark's objections. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Clark's Motion to Suppress.

### B. *Factual Background*

In his Report and Recommendation, Judge Strand made the following factual findings:

> On the evening of June 20, 2015, Officer Weiland was traveling south in his marked police vehicle on South 15th Street in Fort Dodge. As he approached the "T" intersection of South 15th Street and 18th Avenue South, he observed a black Cadillac approaching the intersection from the east (Weiland's left). In two separate police department reports and a sworn criminal complaint, Weiland wrote that he "observed a black Cadillac with a black female driver stopped at the intersection without a seat beat on." Ex. A at 2; Ex. B at 18; Ex. C at 1-2. Weiland testified, however, that he first saw the vehicle while it was still in forward motion. Video from Weiland's dashboard camera (Ex. F) does, in fact, show the Cadillac in forward motion as it slowed to a stop, but the video is not sufficiently clear to discern whether the driver (later identified as Clark) was wearing a seat belt.
>
> Weiland was preparing to turn left onto 18th Avenue South at the time, meaning he would turn directly in front of

3

Clark's vehicle. He testified that as he approached that vehicle, he saw Clark reach up, grab her seat beat and pull it down, as if to fasten it. He cannot recall whether Clark's vehicle was fully stopped or still decelerating when Clark made this movement. In any event, Weiland decided to initiate a traffic stop based on his suspicion that Clark had been operating her vehicle without wearing a seat belt.

Weiland completed his left turn and then entered a driveway in order to turn his vehicle around and pursue Clark. He testified that as he executed this maneuver, he looked back at the intersection and saw Clark turn right onto South 15th Street and accelerate rapidly. He perceived her rate of acceleration to be faster than normal. He then turned back onto South 15th Street to pursue Clark. Soon thereafter, he saw Clark's vehicle turn left into a driveway off of South 15th Street, less than one block from the intersection with 18th Avenue South. Weiland followed Clark's vehicle and activated his overhead lights (but not his siren) just before making the left turn into the driveway.

Clark drove her vehicle to the end of the driveway, which was relatively long. She then exited the vehicle quickly, leaving the driver's side door open, and fled to an adjacent, downhill embankment that leads to the Des Moines River. Weiland parked his vehicle behind Clark's Cadillac and pursued her on foot. He testified that he could see Clark stumbling and falling down the steep embankment. He followed and likewise fell at least once. He does not recall whether he ever yelled anything at Clark during the pursuit. Weiland quickly caught up with Clark and placed her under arrest. He testified that the arrest was based on an alleged violation of Iowa Code § 719.1 (interference with official acts).1 Weiland did not place Clark in handcuffs at that time, as she was complaining of a leg injury and he believed it was going to be difficult to walk her back up the steep hill. As they walked, Clark attempted to reach into a purse she was

4

carrying. According to Weiland, he was concerned that she might be reaching for a weapon, so he seized the purse. As they approached the top of the embankment, Weiland threw the purse to the top so he could help Clark ascend the final, steep portion. Once they reached the top, Clark again reached for the purse and, this time, was able to pull an object from it. She then threw the object down the embankment. Weiland restrained Clark while waiting for backup to arrive and kept watch on the area where the object had landed.

   Once additional officers arrived, Weiland went back down the embankment to retrieve the item Clark had thrown. He found a large clear plastic bag which held (a) two smaller clear bags containing a crystal substance and (b) two smaller clear bags containing a green leafy substance. Based on his training and experience, Weiland believed that the substances were methamphetamine and marijuana. A subsequent search of Clark's purse revealed additional items of evidentiary value, as did a search of Clark's vehicle pursuant to a search warrant.

Report and Recommendation at 2-4 (footnote omitted). After reviewing the record, I adopt all of Judge Strand's factual findings that have not been objected to by Clark.

## II.  LEGAL ANALYSIS

### A.  *Standard Of Review*

I review Judge Strand's Report and Recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

> The judge may also receive further evidence or recommit the
> matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection

has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required *de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general

or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary,

As noted above, Clark has filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Clark's Motion to Suppress.

### B. Clark's Objections To Report and Recommendation

#### 1. Factual Objections

##### a. Weiland's testimony regarding whether Clark's car was stopped

Clark initially objects to Judge Strand's finding that Weiland "cannot recall whether Clark's vehicle was fully stopped or still decelerating when Clark" fastened her seat belt. Report and Recommendation at 2. She argues that Judge Strand's finding

---

as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

regarding Weiland's testimony on this point is undermined by his arrest report and complaint.

Weiland's testimony that he saw Clark's car moving forward as she approached the intersection is corroborated by his dash camera video. Clark does not dispute that, as Weiland approached her car, he saw her without a seat belt preparing to turn. Weiland testified that he was "assuming" that Clark eventually came to a complete stop, but he could not be sure whether she was still moving or had come to a complete stop when he first observed her without a seat belt. Tr. at 15-17. Weiland's report does not contradict his testimony. Judge Strand cogently observed that Weiland's testimony expands on the details in his report, rather than contradicting it, since his report does not mention that he saw Clark's car moving toward the stop sign for a few seconds before it stopped. Accordingly, Clark's objection is overruled.

### b. *Weiland's testimony regarding whether Clark fastened her seat belt*

Clark also objects to Judge Strand's finding that "as Weiland pointed out during his testimony, he . . . could not be certain that Clark actually fastened her seat belt." Report and Recommendation at 8 n.3. Clark again argues that Weiland's testimony is contradicted by his arrest report in which Weiland stated that Clark "put the seat belt on as [he] approached the intersection." Defendant's Ex. A at 000033. Weiland testified he saw defendant move to fasten the safety belt by pulling it across her body—and assumed she was successful in doing so—but he "did not see her click it." Tr. at 15-16, 47-48). This testimony is consistent with the statement in his report that he saw defendant "put the seat belt on." Defendant's Ex. A at 000033. Accordingly, Clark's objection is overruled.

11

### c. *Weiland's testimony that he observed Clark accelerate rapidly*

Clark next objects to Judge Strand's finding that Clark "accelerated rapidly" after Weiland saw her not wearing her seat belt. Clark bases her objection on the timing of events in the dash camera footage, concluding that "it is unlikely that [Clark] was driving her car any faster than Officer Weiland." Defenedant's Obj. at 5. She further argues that it is "unlikely" that Weiland could have judged how quickly Clark drove away from the intersection because view was obstructed by buildings, a parked pickup truck, and sun glare. Defendant's Obj. at 5-6.

Weiland testified that he has 20-20 vision and that the visibility on the day of Clark's arrest was good. He further testified that, after he passed Clark's car, he was able to continue to observe it through his left, driver's side window. Weiland testified that, from his vantage point, he saw Clark accelerate faster than normal from the stop sign. Tr. at 21, 54. Thus, the evidence supports Weiland's account of his ability to observe Clark's car. Judge Strand's credibility finding concerning Weiland's testimony is entitled to some deference, because he was in a better position than I to observe Weiland's demeanor. *See United States v. Raddatz*, 447 U.S. 667, 673–76 (1980) (holding that, when reviewing a magistrate judge's credibility determinations on a motion to suppress, the court may accept or reject the magistrate judge's determinations and is not required to hold a hearing on contested issues of fact). Furthermore, my review of the transcript of Weiland's testimony gives me no reason to question Judge Strand's assessment that Weiland was a credible witness. Accordingly, Clark's objection is overruled.

### d. Weiland's reason for arresting Clark

Clark also objects to Judge Strand's finding that Weiland arrested Clark for interference with official acts. Clark argues that Weiland also arrested her for a seat belt violation. Weiland testified in pertinent part as follows:

> THE COURT: What—what charge did you have in mind that you were arresting [Clark] for?
>
> THE WITNESS: At least interference.
>
> THE COURT: Interference with official acts?
>
> THE WITNESS: Yes, sir.

Tr. at 56. Thus, although Clark was ultimately charged with both "OBSTRUCTING PROSECUTION OR DEFENSE" AND "FAILURE TO MAINTAIN OR USE SAFETY BELTS-ADULT," Defendant's Ex. A, at 000041, 000045, the record is clear that at the time of Clark's arrest, Weiland was arresting her for interference with official acts.[2] Accordingly, Clark's objection is overruled.

### 2. Objections to legal conclusions

#### a. Whether Weiland had a basis to stop or arrest Clark for not wearing a seat belt

Clark further objects to Judge Strand's legal conclusion that Weiland had reasonable suspicion to conduct a traffic stop for a seat belt violation under Iowa Code § 321.445.[3] Clark contends that Weiland did not have reasonable suspicion to suspect a

---

[2] Weiland's arrest report notes that: "I observed a black Cadillac with a black female driver stopped at the intersection without a seat belt on, which is a traffic violation per Iowa Code 321.445." Defendant's Ex. A, at 000033. Weiland further notes that Clark was "charged with numerous narcotics related violations and driving violations." Defendant's Ex. A, at 000034.

[3] Section 321.445 states in pertinent part that:

13

violation of § 321.445 because "he had no information suggesting [Clark] failed to wear her seat belt while her vehicle was in forward motion" as required by § 321.445. Defendant's Obj. at 2. Clark contends that the only way Weiland could reasonably suspect her of violating § 321.445 is if he saw her car in forward motion at the exact same moment he noticed she was not wearing a safety belt. Clark argues that she had finished coming to a complete stop when Weiland saw her without a seat belt and, therefore, Weiland did not have reasonable suspicion to suspect her of a § 321.445(2) violation.

"The Fourth Amendment permits brief investigative stops—such as the traffic stop in this case—when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–418 (1981); *see Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). Clark does not dispute that Weiland saw her car in forward motion for a few seconds as she approached the intersection, and almost simultaneously saw her without a seat belt. The flaw in Clark's argument is that Weiland was "not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause." *United States v. Chappell*, 779 F.3d 872, 878 (8th Cir. 2015) (quoting *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013)). Reasonable suspicion is a lesser standard than probable cause. *Navarette*, 134 S. Ct. at 1687 ("the level of

---

> The driver and front seat occupants of a type of motor vehicle that is subject to registration in Iowa . . . shall each wear a properly adjusted and fastened safety belt or safety harness any time the vehicle is in *forward motion* on a street or highway in this state.

IOWA CODE § 321.445(2) (emphasis added).

suspicion the [reasonable suspicion] standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause, *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L.Ed.2d 1 (1989)."); *Alabama v. White*, 110 S. Ct. 2412, 2416 (1990) (observing that "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."); *accord United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001). Reasonable suspicion may exist even if the law enforcement officer did not witness the violation, law enforcement officers need only be aware of facts "sufficient to warrant a prudent man in believing that [the defendant] had committed or was committing an offense," *United States v. Taylor*, 106 F.3d 801, 803 (8th Cir. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)), and "have substantial latitude in interpreting and drawing inferences from factual circumstances." *Winarske*, 715 F.3d at 1067 (quoting *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010)).

Thus, even if Clark had come to complete stop when Weiland saw her without a seat belt, Weiland had reasonable suspicion that Clark had violated the seat belt law when moments earlier he saw the car in forward motion. Weiland testified, and his dash camera footage corroborates, the time from which he first observed Clark's car to the time when he saw her without a safety belt was only "a few seconds." Tr. at 15. This extremely close temporal proximity between Weiland seeing Clark's car in motion and his seeing her without a seat belt gives rise to reasonable suspicion that Clark had violated Iowa's seat belt law. The reasonableness of that suspicion is further supported by the fact that Clark moved to fasten her seat belt as Weiland's patrol car approached the intersection. As Judge Strand astutely observed, "it is not unreasonable to suspect that a person

observed pulling a seat belt across her body at one instant was not wearing the seat belt immediately prior to that action." Report and Recommendation at 6. Clark's objection is overruled.

### b. *Innocent explanation*

Clark contends that there is a plausible innocent explanation for what Weiland observed. Clark argues that she simply could have had her seat belt on driving but then "legally removed it while stopped to adjust herself or to retrieve an item from her car." Defendant's Obj. at 8. This objection is also flawed. Federal courts, including the United States Supreme Court, have long held that an investigative stop is permitted even if "the conduct justifying the stop was ambiguous and susceptible of an innocent explanation." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *see United States v. Arvizu,* 534 U.S. 266, 277 (2002) (instructing that reasonable suspicion may exist even if "each of the[ ] factors alone is susceptible of innocent explanation."); *United States v. Sokolow*, 490 U.S. 1, 10 (1989) ("the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts."); *see also United States v. Cotton*, 782 F.3d 392, 395–96 (8th Cir. 2015) (holding that conduct that is susceptible to an innocent explanation can form the basis of reasonable suspicion); *United States v. Donnelly*, 475 F.3d 946, 953 (8th Cir. 2007) ("When considered together, however, otherwise innocent facts can give rise to a reasonable suspicion, especially when viewed through the perspective of an experienced law enforcement officer."); *United States v. Tuley*, 161 F.3d 513, 514 (8th Cir. 1998) ("A reasonable suspicion may be justified even if there are innocent explanations for a defendant's behavior when the circumstances are considered in the totality."); *United States v. White*, 42 F.3d 457, 460 (8th Cir.1994) ("Although there is a possible innocent explanation for each of the factors, as a totality they created a reasonable suspicion justifying further investigation reasonable in scope."); *United States v. Bloomfield*, 40

F.3d 910, 918 (8th Cir. 1994) (observing that "'[a] series of acts that appear innocent, when viewed separately, may warrant further investigation when viewed together.'") (quoting *United States v. Weaver*, 966 F.2d 391, 394 (8th Cir. 1992)). Indeed, in *Terry v. Ohio*, 392 U.S. 1 (1968), the police saw the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. *Id*. at 4. The Court instructed that, although each of these acts was "perhaps innocent in itself," taken together, they "warranted further investigation." *Id*. at 22. As a result, the Court has specifically recognized that "[e]ven in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation." *Wardlow*, 528 U.S. at 125. "*Terry* accepts the risk that officers may stop innocent people." *Id.* at 126. Thus, even though there was an innocent explanation for Clark's action, Weiland was justified in stopping Clark's car to investigate whether Clark had violated Iowa's seat belt law. Clark's objection is overruled.

      *c.*     *Stop to investigate "past" criminal activity*

Finally, Clark objects to Judge Strand's finding of reasonable suspicion to Weiland's stop of Clark's car on the ground that a traffic stop for a past or completed misdemeanor is invalid. Specifically, Clark argues that if Weiland did not see Clark without her seat belt while her car was in forward motion, then all he had reason to suspect was a "completed" traffic offense, which Clark contends cannot be the basis for a stop. *See Navarette*, 134 S. Ct. at 1695 n.3 (2014) (Scalia, J., dissenting) ("The circumstances that may justify a [*Terry*] stop . . . to investigate past criminal activity are far from clear.").

Clark points to the Eighth Circuit Court of Appeals's decision in *United States v. Hughes*, 517 F.3d 1013, 1017-18 (8th Cir. 2008) that placed limits on the police's ability to initiate a stop when some amount of time has passed since the underlying misdemeanor violation. *Id*. (determining that the circumstances did not permit a stop based only on

17

reasonable suspicion of an already-completed trespassing offense). The court of appeals declined "to adopt a per se rule that police may never stop an individual to investigate a completed misdemeanor. To determine whether a stop is constitutional, this court must balance the "nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 1017. Clark's reliance on the *Hughes* decision is misplaced and is grounded on a mischaracterization of Weiland's actions here. Weiland was not investigating a crime that had been completed days, hours, or even minutes earlier, but a possible violation that he had just witnessed. Even if Weiland did not see Clark without a seat belt until after she had come to a complete stop, he nonetheless had reason to believe that she had violated Iowa's seat belt law moments earlier when he saw her car in forward motion. *See United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) ("We have long held that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." (internal quotation marks omitted)); *United States v. Williams*, 403 F.3d 1203, 1206 (4th Cir. 2005) ("'[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.'") (quoting *United States v. Botero–Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (*en banc*)); *see also United States v. Almestica*, 487 F. App'x 764, 765 (3d Cir. 2012) (holding that police officers had reasonable suspicion to stop defendant's vehicle after observing him apparently driving vehicle without wearing seat belt, even though, when officer approached vehicle, he saw that seat belt was actually engaged, but with shoulder restraint under his shoulder.); *United States v. Chatman*, 342 Fed. App'x 555, 557 (11th Cir. 2009) (holding that where police saw that defendant's "seatbelt was unfastened and correctly identified that this conduct violated a traffic regulation, the initial traffic stop

did not violate the Fourth Amendment."); *United States v. Dowd*, 500 F.3d 567, 569 (7th Cir. 2007) (holding that police officer had probable cause to conduct traffic stop where officer saw defendant not wearing a seat belt). Because Weiland had reasonable suspicion to believe that Clark had violated Iowa's seat belt law, his investigatory stop of Clark's car did not violate Clark's constitutional rights. Clark's objection is overruled.

### III. CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Strand's Report and Recommendation and deny defendant Clark's Motion to Suppress.

**IT IS SO ORDERED**.

**DATED** this 27th day of October, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA